IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHERRYE ARMSTRONG, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:09-CV-1217-N |
| § | |
| BANK OF AMERICA N. A. § | |
| § | |
| Defendants. § | |

## **ORDER**

This Order addresses Defendant Bank of America National Association's ("BofA") Motion for Summary Judgment [13]. Because Plaintiff Sherrye Armstrong failed to provide probative evidence and exhaust her administrative remedies, the Court grants the motion.

### **I. ARMSTRONG'S EMPLOYMENT HISTORY AND ORIGIN OF CLAIMS**

Armstrong began working at BofA[1] in 1983. Def.'s Mot. for Summ. J. App. 1 Ex. A at 7 (Armstrong's Dep. 25:23-25) [15]. Armstrong was a Senior Teller "for the last approximately ten years of her employment." Plaintiff's Am. Compl. ¶ 8 [9]. As Senior Teller, Armstrong's "primary responsibility [was] to process transactions accurately and efficiently in accordance to established policies and procedures." Def.'s Mot. for Summ. J. App. 4 Ex. D at 35.

---

[1] The Court uses the term 'BofA' to refer to Bank of America and its predecessors, Interfirst, First Republic, NCNB, and NationsBank, for which Armstrong worked.

ORDER – PAGE 1

During her tenure at BofA, Armstrong exhibited problems accurately processing transactions. In 1996, when she was 50 years old, Armstrong accepted a two-party transit item for deposit on an unqualified deposit slip, which resulted in a performance loss of $1,289.59. *See id* at 7. BofA warned Armstrong because of this incident and informed her that "if [she had] further losses that [fell] in the unacceptable range, it could result in further disciplinary actions . . . including . . . termination." *Id.* In 1999, when she was 54 years old, BofA verbally warned Armstrong for failing to verify a shipment of money and incorrectly counting money in the vault, which resulted in a performance loss of $10,000.00. *See id*. at 12. Again, BofA notified Armstrong that "any further violations in any policy and procedures will result in further disciplinary actions up to and including termination." *Id.* In 2001, when she was 55 years old, BofA again verbally warned Armstrong for ignoring systems prompts that resulted in a performance loss of $972.01. *See id*. at 13. In 2006, when she was 60 years old, BofA gave Armstrong both written and verbal counseling for handling money improperly and leaving $6950.00 unsecured on her desk. *See id*. at 15. Again, BofA notified her that "[f]ailure to meet expectations may result in further disciplinary action up to and including termination." *Id*.

BofA had a procedure to avoid performance losses, which provided that "disciplinary action (up to and including termination) may occur for any cumulative performance loss(es) [of] $2500.01 or more within [a] rolling 12 month period." Def.'s Mot. for Summ. J. App. 2 Ex. B at 5. Following procedure, Tamez, a manager at BofA, fired a 21-year-old associate because she cashed a counterfeit check that resulted in a performance loss of more than

$2500.01 on April 14, 2008. Def.'s Mot. for Summ. J. App. 4 Ex. D at 4. Tamez was also Armstrong's manager. *See id.* at 2. Soon afterward, with the approval of the district manager, Kristen Tamez terminated Armstrong because she also cashed a counterfeit check that resulted in a loss of more than $2500.01. *See id.* at 5. Armstrong was 62 years old at the time of her termination. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. App. 3 Ex. C at 1 [21].

### *A. ADEA Claims*

Armstrong alleges that her discharge violates the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621. *See* Plaintiff's Am. Compl. ¶ 6, 16. Armstrong claims that BofA used her performance loss as a pretext for age discrimination. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. ¶ 20 [20]. Although she admits to cashing a counterfeit check that resulted in a loss of more than $2500.01, Armstrong does not believe that BofA terminated her for that reason. *See* Pl. Am. Compl. ¶ 11-12. To support her pretext claim, Armstrong makes several arguments. First, Armstrong claims that Cole, a bank officer, informed her that the district manager, Tilden, planned to terminate her. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. ¶ 15. However, Armstrong admits that Cole never said that Tilden wanted to terminate her because of her age. *See* Def.'s Mot. for Summ. J. App. 1 Ex. A at 54 (Armstrong Dep. 148:15-23). Second, Armstrong alleges that, in furtherance of Tilden's plan, her manager, Evans, criticized her, called her "old-fashioned", and relegated her to work in the drive-thru bank, a position normally reserved for part-time and less experienced tellers. Pl.'s Resp. to Def.'s Mot. for Summ. J. at ¶ 15, 16. Yet Armstrong also asserts that

Evans never made any derogatory remarks about her age. *See* Pl.'s Am. Compl ¶ 9. Third, she claims that Tilden made the final decision to terminate her, and thereby completed his plan. Pl.'s Resp. to Def.'s Mot. for Summ. J ¶ 17. Tilden admits that he approved of her termination. *See* Def.'s Mot. for Summ. J. App. 5 Ex. E at 3 (Tilden Decl. ¶ 9). Fourth, Armstrong alleges that she had a higher check cashing approval limit than part-time, less experienced tellers. Pl.'s Resp. to Def.'s Mot. for Summ. J. ¶ 18. Lastly, Armstrong asserts that BofA did not discharge younger employees who had similar performance losses.[2] *See id.* at ¶ 19. Armstrong knew that BofA fired one younger similarly situated employee, but she doubts that the termination resulted from a performance loss. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. App. 3 Ex. C at 2. However, she does not actually know the circumstances surrounding the other employee's termination. *See* Def.'s Mot. for Summ. J. App. 1 Ex. A at 62-65 (Armstrong Dep. 161:12-167:2). Armstrong also claims that BofA terminated her in retaliation for her complaints about age discrimination. She did not allege retaliation in her Texas Workforce Commission Civil Rights Division ("TWCCRD")[3] charge because her experience did not meet TWCCRD's definition of retaliation. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at ¶ 26.

---

[2] BofA concedes that another young associate was not fired, but attributes her retention to her previous positive job performance, different management, and lack of training. *See* Defs.' Mot. for Summ. J. App. 3 Ex. C at 2 (Lucero Decl. ¶ 6).

[3] The TWCCRD is the Texas equivalent of the Equal Employment Opportunity Commission ("EEOC").

## *B. FLSA Claim*

Armstrong alleges that BofA violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §207(a)(1). *See* Plaintiff's Am. Compl. ¶ 6. Senior Tellers are sometimes "required to work weekends and/or extended hours." Def.'s Mot. for Summ. J. App. 4 Ex. D at 35. BofA's policy requires Senior Tellers and other overtime eligible employees to "record the hours [they] work on a timesheet or other company approved . . . timekeeping system . . . to ensure [they] are properly paid." *Id*. at 32.

In spite of this procedure, Armstrong asserts that "the general feeling in the banking center if you wanted your job" was to "[r]ecord 40 hours and then do what you had to do to get the job done." Def.'s Mot. for Summ. J. App. 1 Ex. A at 23 (Armstrong Dep. 70:8-21). She held this belief even though she did not know of anyone whom BofA had disciplined for submitting overtime. *Id*. at 26 (Armstrong Dep. 73:7-18). She also did not know if other people failed to submit overtime for the same reason. *Id* (Armstrong Dep. 73:21-22). Armstrong cannot recall if she ever turned in overtime. *Id* (Armstrong Dep. 73:1-6). She did not tell her managers that she worked overtime and did not know if anyone knew that she worked more than forty hours a week. *Id*. at 30-31 (Armstrong Dep. 77:6-78:10). Armstrong could not recall any specific times in which she worked overtime. *Id.* at 25 (Armstrong Dep. 72:19-25). She did not remember if she had kept any records of her overtime, but claimed that "if [she] did, they were in [a] folder that [she] didn't get to take [from BofA]." *Id*. at 77-78 (Armstrong Dep. 191:15-192:1).

## II. SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In doing so, the nonmovant may not rely on "naked assertions of an actual

dispute" but instead "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *In re Lewisville Props., Inc.*, 849 F.2d 946, 950 (5th Cir. 1988) (citing *Anderson*, 477 U.S. at 255–56). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish an element essential to its case, the Court must grant summary judgment. *Celotex*, 477 U.S. at 322–23.

## II. ARMSTRONG DOES NOT RAISE A FACT ISSUE ON PRETEXT OR RETALIATION UNDER THE ADEA

The Court must analyze Armstrong's age discrimination claim under the burden-shifting analysis test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), because her claim is based on circumstantial evidence. *Reeves*, 530 U.S. 133 (2000); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (ADEA retaliation); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003) (ADEA age discrimination). Under this analysis, Armstrong must first show a prima facie case giving rise to the presumption that the employer acted with discriminatory intent. *Reeves*, 530, U.S. at 142; *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005)); *McDonnell Douglas Corp.*, 411 U.S. at 802. BofA assumes for summary judgment purposes that Armstrong can establish a prima facie case. *See* Def.'s Br. in Supp. of its Mot. for Summ. J. at 10 [14].

A prima facie case creates a presumption that the adverse employment action resulted from discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). BofA can rebut this presumption by producing legitimate nondiscriminatory reasons for terminating Armstrong. *Willis v. Coca Cola Enter., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). BofA maintains that it fired Armstrong because she cashed a counterfeit check which resulted in a loss of more than $2500.01. BofA also presents evidence that shows it previously warned Armstrong that it could terminate her if she caused other losses to the bank. BofA's proffered reason for terminating Armstrong is consistent with its documented policies and practices. BofA's policy provides that an employee who incurs a performance loss of more than $2,500.01 is subject to termination. BofA had already terminated a younger employee because she incurred such a loss. Armstrong admits that she cashed a counterfeit check, which resulted in a loss of more than $2,500.01. BofA fired Armstrong after she incurred that loss**.**

### *A. Pretext*

Once the employer offers a legitimate explanation for its actions, the burden shifts back to the plaintiff to raise a genuine issue of material fact that the nondiscriminatory reason is merely pretextual. *Id*. Armstrong raises five arguments to attempt to show that BofA's proffered reasoning was pretextual. First, Armstrong argues that Cole, a bank officer, informed her that Tilden planned to fire her. However, Armstrong admits that Cole never said the Tilden's plan was on account of her age; rather, Armstrong claims that Cole told her that Tilden wanted Armstrong fired because she "was not Bank of America material."

Armstrong claims that in furtherance of Tilden's plan to fire her, Evans called Armstrong "old-fashioned." Assuming Evans made the remark and that it reflects age-related animus,[4] Evans had nothing to do with terminating Armstrong. Evans left the Forney branch long before Armstrong was terminated and had no part in the decision to terminate Armstrong. Stray remarks evince unlawful discrimination only if the comments "first, demonstrate discriminatory animus and, second, [are] made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003). (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000)).

Second, Armstrong alleges that she was placed in the drive-thru bank several days a week with no help. Armnstrong's argument appears to be that she was destined to make a mistake eventually due to the excessive workload and the absence of support and, therefore, being assigned to the drive-thru was evidence that Tilden laid a trap for Armstrong. The difficulty with this argument is that, again, Armstrong has no evidence that Tilden was motivated by age-related animus. Moreover, it does not tend to show that BofA's stated reason for terminating Armstrong is false; rather, it is perfectly consistent with BofA's position that it terminated Armstrong for improperly cashing a counterfeit check.

---

[4]Armstrong testified in her deposition that Evans did not ever make any derogatory comment about Armstrong's age. Also, the term "old-fashioned" does not necessarily refer to age. *See Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1122 (7th Cir. 1998) ("old-fashioned" referred to style rather than age).

Third, she claims that Tilden actually made the final decision to terminate her. While BofA concedes that Tilden approved of Armstrong's termination, Armstrong provides no evidence that his approval was a consequence of her age instead of her performance loss.

Fourth, Armstrong alleges that she had a higher approval limit than ordinary tellers. It is unclear what significance Armstrong attaches to this. She perhaps argues that her act of cashing the counterfeit check did not actually violate BofA's rules or procedures. But Armstrong's testimony that she believes she had an approval limit in excess of the amount of the counterfeit check is insufficient to raise a fact issue regarding whether her termination was consistent with BofA's policies. BofA offered detailed summary judgment proof that Armstrong's actions violated BofA's policies, including copies of the written policies. In specific, BofA showed that Armstrong violated BofA's policies in two respects: (1) she overrode a fraud warning on her computer terminal; and (2) she failed to verify the check by using the bank's computerized images of the check stock and signature. Armstrong's belief that she had an approval limit in excess of the amount of the check simply does not raise a fact issue regarding whether she violated BofA's policies. *See Grimes v. Tex. Sept. of Mental Health & Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996) (unsubstantiated assertions, allegations, speculation, and subjective belief are not sufficient to raise a fact issue of discrimination).

Finally, Armstrong offers anecdotal evidence that BofA retained younger employees who made similar mistakes. In order to show pretext based on different treatment of similar violators, the Fifth Circuit requires evidence that the other violators' situations be "nearly

identical" to the plaintiff's. *See, e.g.*, *Wyvill v. United Cos. Life. Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir.2000) (requiring plaintiff, to demonstrate pretext, to show that employer treated others differently in "nearly identical circumstances"). Armstrong fails to show the circumstances were nearly identical, and thus fails to raise a fact issue on pretext.

The Court, therefore, grants BofA's motion for summary judgment on discrimination.

### *B. Retaliation*

Armstrong's retaliation claim fails because she did not exhaust her administrative remedies. A plaintiff must first file a charge of discrimination with the EEOC or the analogous state agency, here the TWCCRD, before bringing a lawsuit under the ADEA. *See* 29 U.S.C. § 626(d); *Julian v. City of Houston*, 314 F.3d 721, 725-26 (5th Cir. 2002). The scope of an ADEA lawsuit is limited to the content of the charge and the "investigation which can reasonably be expected to grow out of the charge." *Thomas v. Tex. Dept. of Criminal Justice*, 220 F.3d 889, 395 (5th Cir. 2000); *see also Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). A plaintiff fails to exhaust administrative remedies if her claim is not in the charge or scope of its subsequent investigation. *See Armstrong v. Tractor Supply Co.*, 2005 WL 1131675, *1 (N.D. Tex. May 6, 2005). Armstrong did not include retaliation in her TWCCRD complaint. Therefore, Armstrong has not exhausted her administrative remedies and her retaliation claim fails. *See Teffera v. N. Tex. Tollway Auth.*, 2004 WL 2980294, at *2 (5th Cir. 2004) (Title VII discrimination charge does not exhaust retaliation claim) (unpub); *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 2009 WL 3444765, at *3 (5th Cir. 2009) (discrimination charge does not exhaust retaliation claim) (unpub.);

ORDER – PAGE 11

*Luna v. Lockheed Martin Corp.*, 2002 WL 31687698, at *1 (5th Cir. 2002) (retaliation charge does not exhaust discrimination claim) (unpub.). The Court, therefore, grants BofA's motion for summary judgment on retaliation.

### III. ARMSTRONG HAS NOT PRESENTED ANY EVIDENCE REGARDING OVERTIME

Armstrong's FLSA claim fails for two reasons. First, she has no evidence she notified BofA that she was working overtime. Second, she has no evidence of the amount of overtime she allegedly worked. The FLSA states that "no employer shall employ any . . . employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours." FLSA, 29 U.S.C. §207(a)(1). "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir.1995) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981)). BofA understood that Senior Tellers were sometimes "required to work weekends and/or extended hours." Defs.' Mot. for Summ. J. App. 4 Ex. 4 at 35. BofA's procedures required Senior Tellers and other overtime eligible associates to "record the hours [they] worked on a timesheet or other company approved . . . timekeeping system." *Id*. at 33. This procedure indicates that BofA did not stand idly by and allow an employee to perform overtime work without compensation.

Armstrong never notified BofA that she worked overtime. "[I]f the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of

the overtime work, the employer's failure to pay for the overtime hours is not a violation of §207." *Newton*, 47 F.3d at 748 (quoting *Forrester*, 646 F.2d at 414). Armstrong admittedly failed to notify her managers or anyone of the overtime she worked. Def.'s Mot. for Summ. J. App. 1 Ex. A at 30-31 (Armstrong Dep. 77:6-78:10). The only excuse she presents for not accurately reporting her time is a belief that recording overtime would result in discipline. *Id.* at 23 (Armstrong Dep. 70:8-21). This belief is unsubstantiated because Armstrong does not actually know anyone whom BofA had disciplined for submitting overtime or if others did not submit overtime for the same reasons. *Id.* at 26 (Armstrong Dep. 73:7-18, 73:21-22). Summary judgment is proper because Armstrong failed to notify her managers and provides only an unsubstantiated allegation that BofA discouraged recording overtime. *See Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (holding that summary judgment is proper when a plaintiff's FLSA claim had no factual support and only consisted of "unsubstantiated assertions that [she was required] to turn in false time sheets"); *Douglass*, 79 F.3d at 1429.

     Armstrong's FLSA claim also fails because she has no evidence of the amount of overtime she worked. Because BofA established procedures to ensure accurate time reporting, Armstrong "bears the burden of proving, with definite and certain evidence, that [s]he performed work for which [s]he was not properly compensated" to proceed with her FLSA claim. *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1352 (5th Cir. 1980), *implied overruling on other grounds recognized by Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 n.4 (5th Cir. 1999). If BofA had failed to ensure accurate time reporting, Armstrong

would have "to produce *some* evidence to show the amount and extent of the violation." *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317 (5th Cir. 1985) ("when an employer has failed to maintain payroll records required by the Act," the plaintiff has a lowered initial burden of proof than in *Reeves*) (emphasis added).

Armstrong would not meet either standard because she has not offered *any* evidence that shows the amount and extent of the violation. She cannot recall any specific times she worked overtime and does not remember keeping a record of the times she worked overtime. Armstrong attempts to escape the burden of offering evidence by alleging that BofA did not allow her to take a folder with her personal belongings when it terminated her, however she is not even sure if she kept a record of her overtime hours in that folder. If the Court allowed Armstrong to proceed with such nebulous assertions, it would essentially disregard the plaintiff's burden of proof. All a plaintiff would need to survive summary judgment would be unsubstantiated assertions that an employer *could* have kept an item that *might* contain actual evidence. This Court will not open the floodgates for FLSA litigants by allowing charges based on fuzzy memories and hypothetical evidence to continue. *See Douglass*, 79 F.3d at 1429. Accordingly, summary judgment is also proper for BofA on Armstrong's FLSA claim because Armstrong has no evidence of the amount of overtime she allegedly worked.

## Conclusion

Armstrong did not present sufficient evidence to support her age discrimination and FLSA claims. She has also failed to exhaust her administrative remedies in regards to her

retaliation claim. Therefore, the Court grants Bank of America's motion for summary judgment.

Signed December 9, 2010.

_____
David C. Godbey
United States District Judge